1                    UNITED STATES DISTRICT COURT

2                      DISTRICT OF CONNECTICUT

3    _____
     LIBERTARIAN PARTY OF          )
4    CONNECTICUT, ET AL            )
                      Plaintiffs. ) NO: 3:08cv1513(JCH)
5                                  )
     vs.                           )  October 23, 2008
6                                  )  2:30 p.m.
     SECRETARY OF STATE            )
7                      Defendant.  )
     _____
8                                     915 Lafayette Boulevard
                                      Bridgeport, Connecticut
9
                       RULING ON PRELIMINARY INJUNCTION
10

11   B E F O R E:
                    THE HONORABLE JANET C. HALL, U.S.D.J.
12
     A P P E A R A N C E S:
13

14   For the Plaintiff   :       GARY SINAWSKI
                                  180 Montague Street
15                                Brooklyn, NY  11201

16

17   For the Defendant   :       PERRY A. ZINN ROWTHORN
                                  MAURA MURPHY-OSBORNE
18                                ROBERT CLARK
                                  Attorney General's Office
19                                55 Elm Street
                                  Hartford, CT  06141
20

21
     Court Reporter      :       Terri Fidanza, RPR
22

23

24
     Proceedings recorded by mechanical stenography,
25   transcript produced by computer.

1          THE COURT:  The Court is prepared to issue its

2    ruling on the plaintiffs' motion for preliminary

3    injunction.  Before I do that, I would like to make a few

4    preliminary comments.  I apologize to everybody who is

5    here who has to listen to me go on verbally at some

6    length but given the pressing nature of the issue and how

7    long the Court has had to address it, I was not in a

8    position to do a written opinion.  I think it was Thomas

9    Jefferson who said if I had more time, I would have

10    written less.  Probably if I had more time, I would have

11    to say less.

12          I also would like to note I did indicate to

13    plaintiffs' counsel I was not going to address the Motion

14    to Dismiss but I do want to indicate to the defendants

15    that I had reviewed obviously your Motion to Dismiss as

16    far as to the extent it expressed your view as to those

17    issues relevant to the Motion for Preliminary Injunction

18    and it was helpful to have received that on Monday.

19          First by way of background.  This lawsuit was

20    commenced on October 1 and was served upon the defendant

21    on October 3.  The plaintiffs in the case are the

22    Libertarian Party of Connecticut, its chairman, its

23    candidate for presidential electors and candidate for

24    president and vice president of the United States.

25          The sole defendant is the Secretary Of State

1    Susan Bysiewicz in her official capacity.

2         The plaintiffs assert claims under 42 U.S.C

3    Section 1983 for violation of their rights under the

4    First and Fourteenth Amendment.  They allege denial of

5    access on the ballot, denial of their rights to political

6    association or put another way to create a new political

7    party, denial of their Equal Protection Rights and denial

8    of procedural due process.

9         The remedy the plaintiffs seek in their

10   complaint is both a preliminary and a permanent

11   injunction prohibiting the Secretary from refusing to

12   place Mr. Barr and Mr. Root on the November 4th ballot.

13   They seek a declaration that the Secretary of State's

14   refusal to place those two gentlemen on the ballot was

15   unconstitutional and finally the award of attorney's fees

16   and costs.

17        Subsequent to the filing of the complaint which

18   was I believe entered on the computer system of this

19   Court on October 3.  The Court became aware of the

20   existence of the lawsuit and reviewed the complaint and

21   scheduled a status conference on October 8.  I was

22   particularly concerned, as I noted at that conference,

23   that there was no Motion for a Preliminary Injunction

24   accompanying the complaint.  I was concerned it had

25   either been misplaced or misdocketed by the Clerk's

1      Office and that, in fact, if there was a motion, that I

2      should be attending to.

3             Of course, the Court cannot act without a

4      motion.  Federal Rule of Civil Procedure 7B states that a

5      request for a court order which would, of course, be what

6      the preliminary injunction is, must be made by motion.

7             At the status conference, plaintiffs' counsel

8      confirmed that there had been no motion filed and he was

9      not certain when one would be filed.

10            Subsequent to that conference which as I say

11     was on October 8, a Motion for a Preliminary Injunction

12     was filed on last Friday, October 17, at 4 p.m. in the

13     afternoon.

14            The basis for that motion is that the

15     plaintiffs' claim that they are likely to succeed on the

16     merits at the higher standard that I discussed with

17     plaintiffs' counsel and will suffer irreparable harm.

18     The latter point being unquestioned that the injuries to

19     the plaintiffs' rights are severe and can't be justified

20     by the legitimate state interest and that the preliminary

21     injunction would advance the public's interest.

22     Plaintiffs argued also that they were not foreclosed by

23     laches and they should be excused from the requirement of

24     posting a bond.

25            As I just indicated, the defendant on Monday

1    filed a memorandum in effect in support of a motion to

2    dismiss, as well as stating its opposition to the Motion

3    for a Preliminary Injunction and the basis as set forth

4    in that memorandum are as follows:

5              That the plaintiffs have failed to state a

6    claim under Section 1983 because they didn't allege that

7    any state actors acted intentionally.

8              Second, that the lawsuit is barred by the

9    Eleventh Amendment because the claim is that the state

10   actor or actors failed to comply with state law, not

11   federal law.

12             Third, that the plaintiffs' suit is barred by

13   the Doctrine of Laches and that issuing an injunction at

14   this time would be against the public interest.

15             A Motion for a Preliminary Injunction is

16   obviously the standard for satisfying or having the

17   granting of such a motion, has been addressed many times

18   by the Second Circuit in many precedents.

19             However, what's clear from all of those

20   decisions is that there's a one standard for granting a

21   Motion for Preliminary Injunction which is likelihood of

22   success on the merits or serious question going such that

23   on balance, to the merits such that on balance, an award

24   is appropriate.

25             However in this case, as I think it was

1    conceded by plaintiffs' counsel, there was more than one

2    reason why a higher standard is triggered.  Here we have

3    a request by the plaintiff in preliminary form, that

4    effectively if granted give them the entirety of what

5    they seek in their complaint.

6         Second, the nature of the complaint sought is a

7    mandatory injunction, not a status quo injunction.  In

8    other words, unlike some election cases where it is to

9    keep a name on a ballot, i.e., the status quo.  This is

10   to put a name on the ballot which is not there.

11        And also I think, although I don't really need

12   this given the first two grounds I just stated, I think a

13   higher standard is likely called for given the nature of

14   what's at issue in the motion.  It is a public activity.

15   It is the conduct of elections.  There's a high public

16   interest it.  It is a governmental action.

17        I think any of those would trigger the higher

18   standard which is as follows:

19        Obviously first, there must be irreparable

20   harm.

21        And second, and I'm quoting from a case of the

22   Second Circuit case of Doninger v. Niehoff, 527 F.3d 41,

23   (Second Circuit 2008).  That case involved a mandatory

24   injunction.  "When the movant seeks a mandatory

25   injunction, that is, as in this case, an injunction that

1 will alter rather than maintain the status quo, she must

2 meet the more rigorous standard of demonstrating a

3 "clear" or "substantial" likelihood of success on the

4 merits."

5    The Court, therefore, has in mind that the

6 plaintiffs' burden here is to meet that higher standard

7 of demonstrating a likelihood of success that is clear or

8 substantial.

9    I'm going to focus on, although the plaintiff

10 has raised a number of claims under the First Amendment

11 as well as an Equal Protection claim, the Court is going

12 to focus on the due process claim.  I do so, well, for a

13 number of reasons.

14    First, I think the plaintiff conceded as I

15 would have otherwise concluded that the Equal Protection

16 claim really doesn't have any legs to it or basis for it.

17 There's nothing certainly alleged in the complaint and I

18 haven't heard anything here or in the affidavit of

19 Mr. Rule that gives me the basis upon wish to claim

20 discrimination was made.

21    With respect to the First Amendment claims,

22 those are obviously very serious First Amendment claims

23 but as the court in Rivera-Powell in the Second Circuit

24 stated, when the First Amendment claim is "virtually

25 indistinguishable from the due process claim," that was

1   the case in the Rivera-Powell opinion and I think it is

2   the case here.  And I think that because here like in

3   Rivera-Powell, there was no challenge to the

4   constitutionality of the state law.  There was only a

5   challenge to how state official or officials applied it.

6           And therefore, in effect, the First Amendment

7   claim is not distinguishable from the due process claim.

8   As that court in Rivera-Powell said at page 469 "When as

9   here, a plaintiff challenges a Board of Election decision

10  not as stemming from the constitutionality or statutorily

11  invalid law or regulation, but rather as contravening a

12  law or regulation whose validity the plaintiff does not

13  contest, there is no independent burden on First

14  Amendment rights when the state provides adequate

15  procedures by which to remedy the alleged violation.  And

16  as that quote continues, "We note that a contrary holding

17  would permit any plaintiff to obtain federal court review

18  of even the most mundane election dispute merely by

19  adding a First Amendment claim to his or her due process

20  claim.  We would thereby undermine our holding that we

21  share with many other circuits, that the federal court

22  intervention in "garden variety" election disputes is

23  inappropriate," dot, dot dot.  "We therefore hold when a

24  candidate raises a First Amendment challenge to his or

25  her removal from the ballot based on the allegedly

1   unauthorized application of an admittedly valid

2   restriction, the state has satisfied the First Amendment

3   if it has provided due process." That quote covers 469

4   to 470.

5          While the facts in Rivera-Powell are slightly

6   different. I won't say slightly. Are different than the

7   facts here having to do with the removal of a name of a

8   person from the ballot, here it is the placement of the

9   name. The refusal to put a name on the ballot.

10  Essentially for the purposes of the analysis of due

11  process, the First Amendment claim, I think the

12  Rivera-Powell case is very instructive one so, therefore,

13  my focus will be on the due process claim of the

14  plaintiffs. If there is a due process claim, I guess

15  what Rivera-Powell is saying is then there's a First

16  Amendment claim. If there's no due process violation,

17  then there's no First Amendment claim.

18          The due process claim is a challenging one to

19  address. Where shall I begin? First, let me identify

20  what I think is the process provided by the state of

21  Connecticut. That is the cause of action provided in

22  Connecticut General Statute Section 9-323 which provides

23  that any elector or candidate who claims he's aggrieved

24  by any ruling of any election official in connection with

25  any election for presidential electors, dot, dot, dot,

1    may bring his complaint to any judge of the Supreme

2    Court, dot, dot, dot.  If such a complaint is made prior

3    to such election, such judge shall proceed expeditiously

4    to render judgment on the complaint, dot, dot, dot" and

5    to provide a remedy.

6           I will attempt to address the due process claim

7    which as I say raises a number of interesting issues.

8    The first question I think is whether this is an

9    intentional act or a random act, as I had a bit of a

10    conversation about that with counsel during the oral

11    argument.

12           The Gold decision out of the Second Circuit at

13    101 F.3d 796, (Second Circuit 1996) talked about the fact

14    that it would not be an intentional act in connection

15    with the due process violation if what we were speaking

16    of were election irregularities.  In that case, there

17    were quite a long list of irregularities which I think

18    appalled certainly Judge Oakes on that two-judge panel

19    but in the end, they concluded they did not qualify as

20    random acts that would be help up to different standard

21    under due process.

22           Instead they concluded they were "voting

23    irregularities."  They were such things as the delay in

24    the delivery of the voting machines, miscounting on

25    votes, the appearance of ineligible candidates on

1  ballots.  The Court would note as an aside that all of

2  these things, these irregularities, appear to have

3  occurred in that case as a result of a last minute court

4  order affecting a change in the candidates listed on the

5  original ballot.

6       Defense counsel pointed me to Powell v. Power.

7  In that case, the Second Circuit held -- spoke about the

8  Court being thrust into the details of virtually every

9  election, tinkering with the state's election machinery,

10  reviewing petitions, et cetera.  "Absent a clear and

11  unambiguous mandate from Congress, we are not inclined to

12  under take stuff a wholesale expansion of our

13  jurisdiction into an area which, with certain narrow and

14  well defined exceptions, has been in the exclusive

15  cognizance of the state courts."  436 F.2d, 84 at 86.

16  (Second Circuit, 1970.)

17       The Court in Gold subsequently described the

18  Powell decision as, in effect, holding that plaintiffs

19  who can establish nothing more than "unintended

20  irregularities" in the conduct of elections are barred

21  from obtaining 1983 relief in federal court, provided

22  there's an adequate and fair state remedy.

23       The Second Circuit, however, takes up this

24  question again of what is whether something is

25  intentional or not in Rivera-Powell and clarifies at

footnote 7 that the removal of Rivera-Powell from the
ballot was "clearly an intentional act".  As best I read
that case and I have read it several times but I have to
say there's been a bit of press here so I may not have
read it clearly but there seems to have been a complaint
about the fact that her petitions were not in order.  It
sounds like were not numerous enough.  However they had
been put on the ballot and this objection was to take her
off.  So a Board of Elections procedure in New York State
provides that the board would decide that question and it
did.  It determined to remove her from the ballot and the
Court distinguished Shannon, that's another Second
Circuit election case, and Gold by describing them as
dealing with inadvertent election irregularities and
contrasted that with the facts before it in Rivera-Powell
which clearly an intentional act occurred when the
candidate was removed from the ballot.

What is the challenge in this case is that the
Gold opinion quoting Powell speaks about meshing federal
courts in reviewing petitions which is what the plaintiff
would have me do here, and yet this concerns a decision,
albeit the Secretary of State didn't review the
petitions.  Nonetheless, it is her decision not to put
Mr. Barr on the ballot.  So it is -- it is not completely
analogous to Rivera-Powell and it does involve an

1    activity which Gold in citing Powell v. Porter

2    specifically said shouldn't be the domain of the federal

3    court.

4           I think that's a very close question for this

5    court.  Of course, the plaintiff has to clearly and

6    substantially establish his cause of action.  I think in

7    that regard it is a question of law.  It is really not a

8    fact so it is really a judgment for me to make as to what

9    the law is in this area.  Of course, this is a sort of

10   preliminary question to that analysis which is whether --

11   it is not preliminary.  As to assuming it is an

12   intentional act then the Court needs to address whether

13   there's an adequate state remedy or procedure.  That if

14   it is intentional, my understanding is that if there were

15   pre and post-deprivation procedures that would be the end

16   of the discussion.  That raises the question of what is

17   the deprivation here in terms of deciding is there a

18   predeprivation procedure.  If the deprivation is the

19   refusal on the 15th of September to put the Plaintiff

20   Barr on the ballot, then there's no predeprivation

21   procedure that I know of in Connecticut.  I don't believe

22   counsel brought any to my attention.  If the deprivation,

23   though, is the ability to be on the ballot on November 4,

24   then there is a predeprivation procedure.  Again a

25   difficult question.  But let's assume that the

1    deprivation occurs sometimes in September because ballots

2    begin to go out according to Mr. Bromley absentee,

3    presidential, overseas, military, late September, early

4    October.

5            So let's assume the deprivation did occur

6    sometime before November 4, then we had in the sense, not

7    necessarily in a predeprivation procedure so then we're

8    left I think at looking I think at assuming I decide the

9    intentional question in the plaintiffs' favor as a matter

10   of law and I decide the deprivation occurs before

11   November 4, that's left unanswered by the Second Circuit

12   in Rivera-Powell I think.  Then we're left with the

13   question under traditional due process case law of

14   whether the post-deprivation remedy does satisfy due

15   process.  And as I indicated with counsel for the

16   defendant, there are three factors I believe that I

17   should address that's the private interest affected by

18   the official action, the risk of an erroneous deprivation

19   through the procedures used and the probable value of any

20   additional or substitute procedural safeguards and

21   finally, the government's interest including the function

22   involved and the burden that additional or substitute

23   procedural requirements would entail.

24           Obviously the private interest here affected by

25   the official action is a large one.  The right to

1    associate politically, to be able to vote for the

2    candidate of your choice, all of those rights which I can

3    go on and characterize in various ways under the First

4    Amendment are very substantial rights which we all enjoy

5    and cherish.

6         The risk of erroneous deprivation of the

7    plaintiffs' interests in their rights under the First

8    Amendment through the procedure provided in Title 9, the

9    one that I cited in the Connecticut statutes, strikes me

10   as that's a low likelihood of there being error made when

11   any possible administrative level error or not

12   administrative, clerk, registrar, Secretary of State

13   error is brought to the attention, while it says judge of

14   the Supreme Court.  I assume it means Justice of the

15   Supreme Court, but brought to the attention of a member

16   of the Supreme Court who is instructed in mandatory

17   language to expeditiously address it.  I think the risk

18   of that justice making an error that would result in the

19   deprivation of the rights of the plaintiffs in this case,

20   I would think would be extremely low.

21        Now, part of that second factor involves a

22   consideration of I will put it very colloquially would we

23   better off if there was some other procedure other than

24   this cause of action before the Supreme Court Justice.

25   How do you answer that?  If there was another level of

1    review, I don't know that anyone could ever say it

2    wouldn't be of value.  The difficulty I think faced here

3    is the time table and that is could you have time to do

4    another overview so I think the answer is that there

5    would be value to say an administrative level of review

6    or some other type of review before the Supreme Court

7    Justice review.  But in the context of elections, I think

8    its value, in fact, would be a harm because of the

9    additional time it would take.

10           The last interest or fact that's to be weighed

11   is the government's interest including the function

12   involved in the burdens of additional or substitute

13   procedural requirements.  I guess I have answered that by

14   saying that I recognize that the Secretary of State has

15   important responsibilities to carry out including

16   certifying properly people who qualify.  But there's an

17   overall governmental interest in the carrying out of

18   elections.  Every election is important.  Clearly

19   presidential elections are very important, and there are

20   time pressures that are affected upon the Secretary of

21   State in carrying out those responsibilities.  So as I

22   noted while additional procedural steps or administrative

23   review might be helpful, not so much the cost I think

24   here but the time, the cost and time is a burden that

25   would argue against a finding that those additional

1    procedures would be valuable.

2         There are a couple of cases I found.  They are

3    both out of New York which New York does sometimes seem

4    to have a predeprivation procedure but in these cases, I

5    have read these carefully.  I think they say at least in

6    Douglas v. Niagara County Board of Electrics, 2007 West

7    Law 3036809 Western District of New York, 2007.  Judge

8    Arcara found that the plaintiff had an adequate

9    opportunity to be heard in the form of the special

10   proceeding brought in New York State Supreme Court under

11   New York state election laws and quoting Rivera-Powell

12   said the due process clause does not protect against all

13   deprivations of constitutionally protected interest,

14   life, liberty or property "only against deprivation

15   without due process." Rivera-Powell 470 F.3d at 465 --

16   64-65 quoting a Supreme Court case.

17        So it would be my conclusion that certainly

18   under the heightened standard that the plaintiff must

19   satisfy and as a matter of law that he has not shown a

20   clear or substantial likelihood of success on the merits

21   on the due process claim.  Because the Court has

22   indicated, as I articulate my thinking in that regard,

23   there are several questions that have to be answered in

24   that analysis and that I think I expressed my -- what's

25   the right word?  Suggestion that one or more of those

1     might be a close question even given the plaintiffs' high

2     standard.

3              The Court is going to assume for the sake of

4     argument that the plaintiff has demonstrated a due

5     process violation and address the defendant's special

6     defense of laches.  Both parties have addressed it and in

7     the Court's view, that issue is very clear.

8              The first thing I would say is that it occurred

9     to me last night that laches is a special defense which I

10    believe must be pled.  The defendants haven't pled them

11    because they made a motion to dismiss.  However the Court

12    was able to find that in the context of preliminary

13    injunctions, the Court, in effect, the burden follows

14    what would be the burden in the case.  And so, for

15    example, if the burden of proof of laches is on the

16    defendant generally as to a claim asserted that would be

17    at trial or in a motion for summary judgment, then the

18    burden would be on the defendant in the context of the

19    preliminary injunction motion.

20             There's one election case which is technically

21    an uncitable Ninth Circuit case but I think the Supreme

22    Court threw those uncitable rulings out.  McDonald v.

23    County of San Diego, 124 Fed APPX 588, it appears 2005

24    West Law 736663 Ninth Circuit 2005.  In which the Court

25    clearly affirmed the district court who concluded that

1  the plaintiff had failed to demonstrate a likelihood of

2  success of the merits because it was barred by the

3  equitable defense of laches.  In other words, recognizing

4  the consideration of special defenses is appropriate.

5          There's also a recent Supreme Court case called

6  Gonzales, as in the Attorney General, versus the O Centro

7  Espirita.  It is 126 Supreme Court 1211 and that goes

8  through citing what I suppose could be assumed principles

9  but as I say, it occurred to me last night it wasn't so

10  obviously.  This case says the government there had

11  invoked the well-established principle.  Those are the

12  words of the Supreme Court.  That the party seeking

13  pretrial relief bears the burden of demonstrating the

14  likelihood of success on the merits.  The Court then says

15  that it viewed the evidence before the district court in

16  equipoise related to two of the compelling interests

17  asserted by the government which formed part of the

18  government's affirmative defense.  And then citing a

19  prior decision by themselves, the Supreme Court continues

20  quote, we reasoned that, quote, as the government bears

21  the burden on the ultimate question of the challenged

22  Acts constitutionality, respondents, bracket, the

23  movants, must be deemed likely to prevail unless the

24  government has shown the respondents' proposed less

25  restrictive alternatives are less effective than

1    enforcing the act.".

2           Then lastly Hubbard Feeds, an Eighth Circuit

3    opinion in 1999 at 182 F.3d 598 at page 601.  "The

4    equitable defense of laches is applicable to an action to

5    enforce a contestable trademark and therefore, should be

6    considered in evaluating the likelihood of success on the

7    merits of the trademark infringement claim.".

8           So having put myself, my mind at ease that it

9    is appropriate to consider a special defense on a motion

10   for preliminary injunction but conclude that the

11   defendant has the burden in connection with the

12   preliminary injunction of establishing that special

13   defense, and I would suggest why the higher standard is

14   required here.

15          Laches is a defense that is based on the maxim,

16   "vigilantibus non dormientibus aequitas subvenit."  My

17   clerk is probably grimacing over there.  Which means

18   "Equity aids the vigilant, not those who sleep on their

19   rights."  Ikelionwu v. the United States, 150 F.3d, 233

20   (Second Circuit, 1998.).

21          As the court continued in that case, "It is an

22   equitable defense that bars a plaintiff's equitable claim

23   where the plaintiff is guilty of unreasonable and

24   inexcusable delay that has resulted in prejudice to the

25   defendant."  Thus the party asserting that defense, in

1    this case, the Secretary, has to show the plaintiff knew

2    of the defendant's misconduct.  Second, that the

3    plaintiff is excusably delayed in taking action and

4    third, the defendant was prejudiced by the delay.

5            Another Second Circuit case decided a few years

6    before that, that case whose name I can't pronounce, the

7    second earlier case captioned Conopco Inc. v. Campbell

8    Soup Company.  95 F.3d 187 (Second Circuit 1996).

9            The circuit said in expounding on what it

10   means for a defendant to be prejudiced stated "A

11   defendant has been prejudiced by a delay when the

12   assertion of a claim available some time ago would be

13   "inequitable" in light of the delay in bringing that

14   claim.  Specifically, prejudice ensues when a "defendant

15   has changed his position in a way that would not have

16   occurred if the plaintiff had not delayed.".

17           There are a number of election cases obviously

18   cited by the parties in which, particularly the

19   defendant, laches has been recognized and generally arise

20   in the context of where the defendant election official

21   claims that the plaintiff has come into court so late in

22   the process to seek relief that basically the process

23   can't be unwound, then the relief granted to them, the

24   plaintiffs, without throwing into chaos the whole

25   election process and jeopardizing the rights of all

1    voters.

2         Obviously there's been a mention made today of

3    the Williams case by the plaintiff.  In that case on

4    October 15, the court declined to require the State of

5    Ohio to put a minority party, a socialist labor party on

6    the ballot even though the Supreme Court recognized their

7    claims as material.  Indeed there had been another party,

8    the independent party, who had made the same complaint as

9    the socialist party.  The two of the parties had

10   proceeded through a whole several steps of process and

11   eventually in a hearing before a single justice, Ohio

12   represented that they could put the independent party's

13   name on the ballot without disruption but if there was

14   any more delay, it would be a different story.  At that

15   proceeding, only the independent party was present. The

16   socialist party not having proceeded past the district

17   court decision.  The socialist party after the delay of

18   several -- what the court describes as several days which

19   is not very much, came forward and said well, I would

20   like that order that you gave on behalf of the

21   independent party to apply to socialist party and the

22   State objected on the grounds at this point, it would be

23   disruptive of the process and on October 15, Justice

24   Stevens.  I think it was Justice Stevens -- Stewart.

25   Justice Stewart said "Certainly at this late date, it

1    would be extremely difficult, if not impossible, for Ohio

2    to provide still another set of ballots. Moreover, the

3    confusion that would attend such last-minute change would

4    pose a risk of interference with the rights of other Ohio

5    citizens, for example, absentee voters."

6         There's another Supreme Court case which is

7    Norman v. Reed which the plaintiffs cite which would

8    appear on first glance to be favorable to them because

9    there again -- not again.  There Justice Stevens granted

10   an injunctive relief on October 25 which, of course, is

11   later than today.  Let alone the day the plaintiff filed

12   their preliminary injunction motion.  However, the relief

13   that Justice Stevens awarded in that case was to allow a

14   name which was on the ballot that had been printed to

15   remain on the ballot.  So, in effect, the decision

16   reached by the justice caused no disruption of the

17   electoral process that was in place and moving throughout

18   as at least as in Connecticut here September and October.

19        Lastly in the case of McCarthy v. Briscoe which

20   I think I mentioned briefly in argument, Justice Powell

21   again sitting as a circuit justice, ordered that the

22   Eugene McCarthy's name placed on the November

23   presidential ballot.  That case, of course, that's fairly

24   late but I believe in this case, Mr. Bromley testified

25   that had the plaintiff come forward sometime in September

that this process in Connecticut could have been
suspended and we would not have been as far down the road
and less would have had to be unwound and more time would
be available had the plaintiffs moved in say mid to late
September the time frame that Justice Powell was
addressing.  The Court will note that the case that
Justice Powell was acting on was filed on July 30.  While
I recognize that the plaintiffs could not have filed that
early.  However Justice Powell's decision is 17 days
before the plaintiffs asked this court to rule.  I hope
everyone would recognize that it would take any district
court judge at least a day, in my case, I was taking two
days, to address the issues raised by the motion.

There are a number of other cases that have
been cited by both sides.  I will not bother going
through all of them but one of them I think is
particularly informative.  That's the Fulani v. Hogsett
case out of the Seventh  Circuit.  That suit was filed on
October 13 after the plaintiffs had waited 11 weeks after
the irregularities had become a matter of public record
but two weeks after the plaintiff had actual notice of
them.  In that instance, the Court found that there was
laches and spoke at some length about the impact of
trying to undue what the election officials had done in
the time frame in which the plaintiffs had sort of sat on

1    the sidelines and not brought their case.  "Laches arises

2    when an unwarranted delay in bringing a suit or otherwise

3    pressing a claim produces prejudice to the defendant. In

4    the context of elections this means any claim against the

5    state electoral procedure must be expressed expeditiously

6    As time passes, the state's interest in proceeding with

7    the election increases in importance as resources are

8    committed and irrevocable decisions are made.  The

9    candidate's and party's claims to be respectively a

10   serious candidate and a serious party with a serious

11   injury become less credible by their having slept on

12   their rights.".

13        As I say, there's a lot of cases I have

14   reviewed.  The other case that permitted the changing of

15   a ballot is the New Jersey Democratic Party case where

16   Candidate Toricelli died on October 1 and October 2 the

17   Supreme Court in New Jersey ordered the reprinting of

18   ballots at the cost of $800,000 to be borne by the

19   plaintiffs which were in effect the Democratic party who

20   sought to put a live's person name on the Democratic

21   line.  Again the court would note that was October 1 that

22   the plaintiff came to the court and the 2 that the court

23   ordered relief.

24        Here, while the plaintiff filed their suit on

25   October 1, despite the inquiry of the court, no motion

1    was filed as required by Rule 7 until October 17.  The

2    Court appreciates Mr. Rule's affidavit in which he

3    indicates that it took some time after the 15 for him to

4    be able to determine, in fact, whether he had 7500 valid

5    signatures presumably allowing counsel under Rule 11 to

6    be able to make a claim in this federal court that's

7    based in fact and law.  The affidavit doesn't tell me

8    exactly how long that took Mr. Rule, though.  Even if I

9    assume it took him two weeks, in other words, until

10   October 1, when the complaint was filed, that still

11   doesn't explain why the motion for preliminary injunction

12   wasn't filed on October 1.  The Court was available.  I

13   think I can say that as a matter of speculation.  I held

14   that conference on the 8th.  If I had a motion, I would

15   have acted sooner than the 8th and it can't be said that

16   certainly by then the plaintiff had a basis for his

17   claim.  So there's nothing before the Court that explains

18   to me why the plaintiff waited until October 17 to ask

19   this court to enter a preliminary injunction against the

20   Secretary of State.

21          Therefore, it is the conclusion of this court

22   that the defendants have shown that there's a substantial

23   likelihood of their success on the special defense of

24   laches and the necessary conclusion from that, therefore,

25   is that the plaintiff cannot show a substantial

likelihood of success of succeeding on the merits because

if it has a meritful claim, it would be barred by the

defense of laches.

The court reaches that conclusion with the

backdrop of the cases that I have reviewed and many

others that I have read and I'm not going to bother to

put on the record but it is clear that the plaintiffs

knew of the defendants' alleged misconduct on December 15

when they were told telephonically and by letter that

their two candidates to inform plaintiffs would be

excluded from the November 4 ballot.

As I said, I recognize it could take sometime

to determine if there was a basis to a claim that they

had the requisite number of signatures and their rights

were violated by refusal to certify them for the

election.  I'm not going to comment.  If it did take two

weeks until October 1, I'm not sure that's a reasonable

period given the time pressures that are faced by the

state in preparing for an election on November 4 but and

I don't think the plaintiff has shown that it is

reasonable.  I'm not sure they have claimed that the 15

days was actually necessary but I don't think they have

shown it was reasonable.  Even if it was reasonable, as I

say, there's no excuse for having a basis to allege their

claims, i.e., filing their complaint.  They waited

1    another two and a half weeks to file a motion which

2    motion was filed on Friday afternoon, two and a half

3    weeks prior to the actual election day.  Defendants have

4    clearly shown prejudice.  Could show that prejudice on

5    the day the motion was filed.  Certainly today.  Absentee

6    ballots and other ballots, presidential, military, out of

7    state, I forget what those were called, those had all

8    gone out by the time the motion was filed.  So under some

9    of the cases I referred to, one of the Supreme Court

10   justices pointed to the fact the absentee ballot had gone

11   out so it was too late.  As I asked plaintiffs' counsel,

12   I'm not aware of any case which permitted the election to

13   proceed, some voters, albeit, a very small number but

14   nonetheless voters are voting on a different ballot than

15   the rest of the voters.

16           Also I will not go into a lot of detail.  I

17   referenced Mr. Bromley's testimony, which I do credit.  I

18   found him very credible and clear and I think laid on the

19   record quite clearly what's involved in the state of

20   Connecticut in conducting a presidential election.  The

21   Court finds that two million ballots have already been

22   printed.  The computer cards to run the optical scanning

23   machines to accommodate those two million possible voters

24   have already been programmed I guess if that's the right

25   word and distributed along with the paper ballots out to,

1    I love this about the state of Connecticut, all of its

2    169 cities and towns.

3              In addition, and I would note that while this

4    will be the second election in which almost all of the

5    voters in Connecticut will use optical scanning machines,

6    that it will be the first time in a presidential

7    election, I did not ask about voter turnout in

8    non-presidential elections, but I believe it is

9    reasonable for me to assume that voter turnout on

10   November 4, will be among the highest in the history of

11   the state and certainly higher than is expected say in

12   municipal elections that occurred in 2007.  And so the

13   testing that's needed to be certain that the paper

14   ballots will work on the machine with the computer

15   program cards, has been undertaken and is to be completed

16   by tomorrow.

17             If I were to grant the plaintiffs relief they

18   seek, it would require the reprinting of two million

19   paper ballots, the reprogramming of the computer cards

20   for all of the machines in 169 towns which reflect 833

21   different ballots, the redistribution of the cards and

22   ballots to 169 towns and the testing of those paper

23   ballots against the machines and the cards to be certain

24   that they work.

25             The Court credits Mr. Bromley's testimony.  I

1    think I will conclude this myself but obviously I credit

2    his testimony that this just can't be done.  It can't be

3    done in the time period from today to November 4 and it

4    couldn't have been done from the date of the filing of

5    the motion, the 17th of October.  Among the reasons it

6    can't be done is there aren't printers available to print

7    the two million ballots.  There isn't time available to

8    reprogram the number of cards we're talking about.  Let

9    alone the logistical steps of having to retrieve them,

10    get those cards to the programmers and get them back and

11    into the right machines and tested.

12            Further and this was something I had not myself

13    considered until Mr. Bromley's testimony but that there

14    are other laws, certainly state laws, having to do with

15    challenges, recounts and the designation of electors that

16    may be federal law because it is a presidential election,

17    all of which are tied to certain numbers of dates after

18    the election in which if the election could not occur on

19    the 4th because as I have said, the ballots could not be

20    printed and the cards reprogrammed before then, would

21    throw into chaos really those deadlines and finally

22    create a situation where state law would likely be

23    violated.

24            And lastly a couple of cases I already quoted

25    from talked about the risk of sort of last minute changes

1    posing a risk of interference with the rights of the

2    voters and I think Justice Stewart in the Williams case

3    where he cited the absentee voters whose ballot have

4    already been sent out.  Clearly their rights would be

5    implicated were I to order the relief the plaintiffs'

6    requested those of the personnel from Connecticut serving

7    in the military, those who have relocated and are

8    entitled to vote back here in Connecticut under federal

9    law, their rights would be in jeopardy, would be violated

10   but I think it would be highly likely there would be

11   enormous confusion and therefore, likely errors in the

12   context of an election by trying to make this change at

13   this time given the large amount of voter turnout, the

14   large number of ballots that have to be printed and the

15   number of cards given the new equipment that's put into

16   place I think to comply with federal law.  All that's

17   involved, in other words, in trying to make a change at

18   this point as I say, well, the motion was filed two and a

19   half weeks before the election.  It strikes me that Gold

20   decision which, of course, presented more extreme facts.

21   I believe there the order was issued to remove the

22   person's name much later in the process than today is in

23   the Connecticut process but there in Gold, you were

24   talking about a much smaller pool of voters and voting

25   places and the chaos that appears to have resulted which

1    Judge Oakes recounted at great length, which obviously

2    troubled Judge Trager of the district court.  To me that

3    case sort of is an example of the kind of chaos that can

4    result from Court's intervention at the quote last minute

5    in that case.

6          In this case, we're not on November 3, the

7    hypothetical I posed to the plaintiffs' counsel but

8    effectively we are, as I say, because of the fact that

9    it's a presidential election, that there's two million

10   possible voters, that we have essentially a new system of

11   voting with optical scanning machines that need to be

12   tested against the printed ballots.  And that as I say

13   the absentee and other types of ballots that have already

14   gone out, we're really past the time when this court

15   could in the exercise of its powers of equity, grant a

16   motion for preliminary injunction.

17         Therefore, the Court's final conclusion is I

18   don't believe the plaintiff has demonstrated a violation

19   of due process cognizable under the due process clause

20   but at least not to the standard of substantial or clear

21   as required to get a grant of this motion but even if it

22   has, the Court concludes that the defendant has carried

23   that high burden with respect to its special defense of

24   laches, and particularly because it's demonstrated that

25   would be extremely chaotic and impossible and therefore,

1    harmful to the rights of other voters in Connecticut, the

2    people I suppose that the defendant would claim whose

3    interest she represents if the court were to grant the

4    preliminary injunction that the plaintiffs seek.

5          In essence, while the plaintiffs may have a

6    claim, may be correct in their claim, when they argue

7    that they, in fact, presented 7,500 qualified signatures

8    and thus have a right to be on the ballot.  Again I

9    emphasize the word assume that they presented that.  They

10   waited much too long to seek the Court's relief.

11         Therefore, the motion for preliminary

12   injunction is denied.  The plaintiffs haven't laid out

13   reasonably and inexcusably moved for a preliminary

14   injunction.  They cannot now establish that they clearly

15   are likely to prove their claim.  The motion for

16   preliminary injunction is denied.

17         The opinion of the court is obviously reflected

18   in the transcript.  Again I apologize this is a very long

19   verbal ruling.  I think if any -- if the plaintiffs wish

20   to appeal, they would need to let the reporter know

21   because she's prepared, as she's always diligent to

22   prepare this transcript very promptly and to convey it to

23   the circuit if you do wish to appeal.  And I think I

24   heard at lunch that the Clerk of the Second Circuit has

25   been in touch with our Clerk being certain that the

1    record could be transmitted quickly, if there was an

2    appeal.  I ask that you let the reporter know so she

3    knows whether to stay up tonight to do this opinion so

4    that it will be available to the circuit tomorrow.  All

5    right, sir.  Thank you all very much especially for your

6    patience.  Unless there's anything further, the court

7    will stand adjourned.

8              (Whereupon, the above hearing adjourned at

9    03:27 p.m.)

10

11

12

13

14   COURT REPORTER'S TRANSCRIPT CERTIFICATE

15   I hereby certify that the within and foregoing is a true

16   and correct transcript taken from the proceedings in the

17   above-entitled matter.

18

19   /s/  Terri Fidanza

20   Terri Fidanza, RPR

21   Official Court Reporter

22

23   DATE_____

24

25