## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LIBERTARIAN PARTY OF CONNECTICUT, : 
ET AL., :
      :
    Plaintiffs, :
      :
     v. :  CIVIL ACTION NO.
      :  3:08-CV-1513 (JCH)
SUSAN BYSIEWICZ, in her Official Capacity :
as Secretary of State of the State of :
Connecticut, :
      :  DECEMBER 2, 2008
    Defendant. :

## RULING RE: MOTION FOR PRELIMINARY INJUNCTION (DOC. NO. 15)
### (Issued on October 23, 2008)

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
_____
LIBERTARIAN PARTY OF          )
CONNECTICUT, ET AL            )
                 Plaintiffs.  ) NO: 3:08cv1513(JCH)
                              )
vs.                           ) October 23, 2008
                              ) 2:30 p.m.
SECRETARY OF STATE            )
                 Defendant.   )
_____
```

915 Lafayette Boulevard
Bridgeport, Connecticut

RULING ON PRELIMINARY INJUNCTION

B E F O R E:
            THE HONORABLE JANET C. HALL, U.S.D.J.

A P P E A R A N C E S:

For the Plaintiff    :      GARY SINAWSKI
                            180 Montague Street
                            Brooklyn, NY  11201


For the Defendant    :      PERRY A. ZINN ROWTHORN
                            MAURA MURPHY-OSBORNE
                            ROBERT CLARK
                            Attorney General's Office
                            55 Elm Street
                            Hartford, CT  06141


Court Reporter       :      Terri Fidanza, RPR




Proceedings recorded by mechanical stenography,
transcript produced by computer.

THE COURT:  The Court is prepared to issue its ruling on the plaintiffs' motion for preliminary injunction.  Before I do that, I would like to make a few preliminary comments.  I apologize to everybody who is here who has to listen to me go on verbally at some length but given the pressing nature of the issue and how long the Court has had to address it, I was not in a position to do a written opinion.  I think it was Thomas Jefferson who said if I had more time, I would have written less.  Probably if I had more time, I would have to say less.

I also would like to note I did indicate to plaintiffs' counsel I was not going to address the Motion to Dismiss but I do want to indicate to the defendants that I had reviewed obviously your Motion to Dismiss as far as to the extent it expressed your view as to those issues relevant to the Motion for Preliminary Injunction and it was helpful to have received that on Monday.

First by way of background, this lawsuit was commenced on October 1 and was served upon the defendant on October 3.  The plaintiffs in the case are the Libertarian Party of Connecticut, its chairman, its candidate for presidential electors and candidate for president and vice president of the United States.

The sole defendant is the Secretary Of State

1    Susan Bysiewicz in her official capacity.

2         The plaintiffs assert claims under 42 U.S.C

3    Section 1983 for violation of their rights under the

4    First and Fourteenth Amendment.  They allege denial of

5    access on the ballot, denial of their rights to political

6    association, or put another way, to create a new

7    political party, denial of their Equal Protection Rights

8    and denial of procedural due process.

9         The remedy the plaintiffs seek in their

10   complaint is both a preliminary and a permanent

11   injunction prohibiting the Secretary from refusing to

12   place Mr. Barr and Mr. Root on the November 4th ballot.

13   They seek a declaration that the Secretary of State's

14   refusal to place those two gentlemen on the ballot was

15   unconstitutional and finally the award of attorney's fees

16   and costs.

17        Subsequent to the filing of the complaint,

18   which was I believe entered on the computer system of

19   this Court on October 3, the Court became aware of the

20   existence of the lawsuit and reviewed the complaint and

21   scheduled a status conference on October 8.  I was

22   particularly concerned, as I noted at that conference,

23   that there was no Motion for a Preliminary Injunction

24   accompanying the complaint.  I was concerned it had

25   either been misplaced or misdocketed by the Clerk's

1    Office and that, in fact, if there was a motion, that I

2    should be attending to.

3         Of course, the Court cannot act without a

4    motion.  Federal Rule of Civil Procedure 7B states that a

5    request for a court order which would, of course, be what

6    the preliminary injunction is, must be made by motion.

7         At the status conference, plaintiffs' counsel

8    confirmed that there had been no motion filed and he was

9    not certain when one would be filed.

10        Subsequent to that conference, which as I say

11   was on October 8, a Motion for a Preliminary Injunction

12   was filed on last Friday, October 17, at 4 p.m. in the

13   afternoon.

14        The basis for that motion is that the

15   plaintiffs claim that they are likely to succeed on the

16   merits -- at the higher standard that I discussed with

17   plaintiffs' counsel -- and will suffer irreparable harm.

18   The latter point being unquestioned that the injuries to

19   the plaintiffs' rights are severe and can't be justified

20   by the legitimate state interest and that the preliminary

21   injunction would advance the public's interest.

22   Plaintiffs argued also that they were not foreclosed by

23   laches and they should be excused from the requirement of

24   posting a bond.

25        As I just indicated, the defendant on Monday

filed a memorandum in effect in support of a motion to
dismiss, as well as stating its opposition to the Motion
for a Preliminary Injunction and the basis as set forth
in that memorandum are as follows:

That the plaintiffs have failed to state a
claim under Section 1983 because they didn't allege that
any state actors acted intentionally.

Second, that the lawsuit is barred by the
Eleventh Amendment because the claim is that the state
actor or actors failed to comply with state law, not
federal law.

Third, that the plaintiffs' suit is barred by
the Doctrine of Laches and that issuing an injunction at
this time would be against the public interest.

A Motion for a Preliminary Injunction is
obviously the standard for satisfying or having the
granting of such a motion, has been addressed many times
by the Second Circuit in many precedents.

However, what's clear from all of those
decisions is that there's one standard for granting a
Motion for Preliminary Injunction which is likelihood of
success on the merits or serious question going such that
on balance, to the merits such that on balance, an award
is appropriate.

However in this case, as I think it was

1    conceded by plaintiffs' counsel, there was more than one

2    reason why a higher standard is triggered.  Here we have

3    a request by the plaintiff in preliminary form, that

4    effectively if granted gives them the entirety of what

5    they seek in their complaint.

6            Second, the nature of the complaint sought is a

7    mandatory injunction, not a status quo injunction.  In

8    other words, unlike some election cases where it is to

9    keep a name on a ballot, i.e., the status quo, this is to

10   put a name on the ballot which is not there.

11           And also I think, although I don't really need

12   this, given the first two grounds I just stated, I think

13   a higher standard is likely called for given the nature

14   of what's at issue in the motion.  It is a public

15   activity.  It is the conduct of elections.  There's a

16   high public interest it.  It is a governmental action.

17           I think any of those would trigger the higher

18   standard which is as follows:

19           Obviously first, there must be irreparable

20   harm.

21           And second, and I'm quoting from a case of the

22   Second Circuit case of Doninger v. Niehoff, 527 F.3d 41,

23   (Second Circuit 2008).  That case involved a mandatory

24   injunction.  "When the movant seeks a mandatory

25   injunction, that is, as in this case, an injunction that

will alter rather than maintain the status quo, she must
meet the more rigorous standard of demonstrating a
"clear" or "substantial" likelihood of success on the
merits."

The Court, therefore, has in mind that the
plaintiffs' burden here is to meet that higher standard
of demonstrating a likelihood of success that is clear or
substantial.

I'm going to focus on, although the plaintiff
has raised a number of claims under the First Amendment
as well as an Equal Protection claim, the Court is going
to focus on the due process claim.  I do so, well, for a
number of reasons.

First, I think the plaintiff conceded as I
would have otherwise concluded that the Equal Protection
claim really doesn't have any legs to it or basis for it.
There's nothing certainly alleged in the complaint and I
haven't heard anything here or in the affidavit of
Mr. Rule that gives me the basis upon wish to claim
discrimination was made.

With respect to the First Amendment claims,
those are obviously very serious First Amendment claims
but as the court in Rivera-Powell in the Second Circuit
stated, when the First Amendment claim is "virtually
indistinguishable from the due process claim," that was

1    the case in the <u>Rivera-Powell</u> opinion and I think it is

2    the case here.  And I think that because here, like in

3    <u>Rivera-Powell</u>, there was no challenge to the

4    constitutionality of the state law.  There was only a

5    challenge to how state official or officials applied it.

6          And therefore, in effect, the First Amendment

7    claim is not distinguishable from the due process claim.

8    As that court in <u>Rivera-Powell</u> said at page 469, "When as

9    here, a plaintiff challenges a Board of Election decision

10   not as stemming from the constitutionality or statutorily

11   invalid law or regulation, but rather as contravening a

12   law or regulation whose validity the plaintiff does not

13   contest, there is no independent burden on First

14   Amendment rights when the state provides adequate

15   procedures by which to remedy the alleged violation.  And

16   as that quote continues, "We note that a contrary holding

17   would permit any plaintiff to obtain federal court review

18   of even the most mundane election dispute merely by

19   adding a First Amendment claim to his or her due process

20   claim.  We would thereby undermine our holding that we

21   share with many other circuits, that the federal court

22   intervention in "garden variety" election disputes is

23   inappropriate, ... We therefore hold when a candidate

24   raises a First Amendment challenge to his or her removal

25   from the ballot based on the allegedly unauthorized

application of an admittedly valid restriction, the state
has satisfied the First Amendment if it has provided due
process."  That quote covers 469 to 470.

While the facts in Rivera-Powell are slightly
different -- I won't say slightly, are different than the
facts here having to do with the removal of a name of a
person from the ballot -- here it is the placement of the
name, the refusal to put a name on the ballot.
Essentially for the purposes of the analysis of due
process, the First Amendment claim, I think the
Rivera-Powell case is very instructive one so, therefore,
my focus will be on the due process claim of the
plaintiffs.  If there is a due process claim, I guess
what Rivera-Powell is saying is then there's a First
Amendment claim.  If there's no due process violation,
then there's no First Amendment claim.

The due process claim is a challenging one to
address.  Where shall I begin?  First, let me identify
what I think is the process provided by the state of
Connecticut.  That is the cause of action provided in
Connecticut General Statute Section 9-323 which provides
that "any elector or candidate who claims he's aggrieved
by any ruling of any election official in connection with
any election for presidential electors, ...  may bring
his complaint to any judge of the Supreme Court, ...  If

such a complaint is made prior to such election, such
judge shall proceed expeditiously to render judgment on
the complaint, ... " and to provide a remedy.

I will attempt to address the due process
claim, which as I say raises a number of interesting
issues. The first question I think is whether this is an
intentional act or a random act, as I had a bit of a
conversation about that with counsel during the oral
argument.

The Gold decision out of the Second Circuit, at
101 F.3d 796 (Second Circuit 1996), talked about the fact
that it would not be an intentional act in connection
with the due process violation if what we were speaking
of were election irregularities. In that case, there
were quite a long list of irregularities which I think
appalled, certainly Judge Oakes on that two-judge panel,
but in the end, they concluded they did not qualify as
random acts that would be held up to different standard
under due process.

Instead they concluded they were "voting
irregularities." They were such things as the delay in
the delivery of the voting machines, miscounting of
votes, the appearance of ineligible candidates on
ballots. The Court would note as an aside that all of
these things, these irregularities, appear to have

1    occurred in that case as a result of a last minute court

2    order affecting a change in the candidates listed on the

3    original ballot.

4         Defense counsel pointed me to Powell v. Power.

5    In that case, the Second Circuit held, spoke about the

6    Court being thrust into the details of virtually every

7    election, tinkering with the state's election machinery,

8    reviewing petitions, et cetera.  "Absent a clear and

9    unambiguous mandate from Congress, we are not inclined to

10   under take such a wholesale expansion of our jurisdiction

11   into an area which, with certain narrow and well defined

12   exceptions, has been in the exclusive cognizance of the

13   state courts."  436 F.2d, 84 at 86.  (Second Circuit,

14   1970.)

15        The Court in Gold subsequently described the

16   Powell decision as, in effect, holding that plaintiffs

17   who can establish nothing more than "unintended

18   irregularities" in the conduct of elections are barred

19   from obtaining 1983 relief in federal court, provided

20   there's an adequate and fair state remedy.

21        The Second Circuit, however, takes up this

22   question again of what is whether something is

23   intentional or not in Rivera-Powell and clarifies at

24   footnote 7 that the removal of Rivera-Powell from the

25   ballot was "clearly an intentional act".  As best I read

that case and I have read it several times but I have to
say there's been a bit of press here so I may not have
read it clearly, but there seems to have been a complaint
about the fact that her petitions were not in order, it
sounds like were not numerous enough.  However, they had
been put on the ballot and this objection was to take her
off.  So a Board of Elections procedure in New York State
provides that the board would decide that question and it
did.  It determined to remove her from the ballot and the
Court distinguished Shannon, that's another Second
Circuit election case, and Gold by describing them as
dealing with inadvertent election irregularities and
contrasted that with the facts before it in Rivera-Powell
which clearly an intentional act occurred when the
candidate was removed from the ballot.

What is the challenge in this case is that the
Gold opinion quoting Powell speaks about meshing federal
courts in reviewing petitions which is what the plaintiff
would have me do here, and yet this concerns a decision,
albeit the Secretary of State didn't review the
petitions.  Nonetheless, it is her decision not to put
Mr. Barr on the ballot.  So it is -- it is not completely
analogous to Rivera-Powell and it does involve an
activity which Gold in citing Powell v. Porter
specifically said shouldn't be the domain of the federal

1    court.

2            I think that's a very close question for this

3    court.  Of course, the plaintiff has to clearly and

4    substantially establish his cause of action.  I think in

5    that regard it is a question of law.  It is really not a

6    fact so it is really a judgment for me to make as to what

7    the law is in this area.  Of course, this is a sort of

8    preliminary question to that analysis which is whether --

9    it is not preliminary.  As to assuming it is an

10   intentional act then the Court needs to address whether

11   there's an adequate state remedy or procedure.  That if

12   it is intentional, my understanding is that if there were

13   pre and post-deprivation procedures that would be the end

14   of the discussion.  That raises the question of what is

15   the deprivation here in terms of deciding is there a

16   predeprivation procedure.  If the deprivation is the

17   refusal on the 15th of September to put the Plaintiff

18   Barr on the ballot, then there's no predeprivation

19   procedure that I know of in Connecticut.  I don't believe

20   counsel brought any to my attention.  If the deprivation,

21   though, is the ability to be on the ballot on November 4,

22   then there is a predeprivation procedure.  Again a

23   difficult question.  But let's assume that the

24   deprivation occurs sometimes in September because ballots

25   begin to go out according to Mr. Bromley absentee,

1    presidential, overseas, military, late September, early

2    October.

3            So let's assume the deprivation did occur

4    sometime before November 4, then we had in the sense, not

5    necessarily in a predeprivation procedure so then we're

6    left I think at looking I think at, assuming I decide the

7    intentional question in the plaintiffs' favor as a matter

8    of law and I decide the deprivation occurs before

9    November 4, that's left unanswered by the Second Circuit

10   in Rivera-Powell I think.  Then we're left with the

11   question under traditional due process case law of

12   whether the post-deprivation remedy does satisfy due

13   process.  And as I indicated with counsel for the

14   defendant, there are three factors I believe that I

15   should address: that's the private interest affected by

16   the official action, the risk of an erroneous deprivation

17   through the procedures used and the probable value of any

18   additional or substitute procedural safeguards and

19   finally, the government's interest including the function

20   involved and the burden that additional or substitute

21   procedural requirements would entail.

22           Obviously the private interest here affected by

23   the official action is a large one.  The right to

24   associate politically, to be able to vote for the

25   candidate of your choice, all of those rights which I can

1    go on and characterize in various ways under the First

2    Amendment are very substantial rights which we all enjoy

3    and cherish.

4         The risk of erroneous deprivation of the

5    plaintiffs' interests in their rights under the First

6    Amendment through the procedure provided in Title 9, the

7    one that I cited in the Connecticut statutes, strikes me

8    as that's a low likelihood of there being error made when

9    any possible administrative level error or not

10   administrative, clerk, registrar, Secretary of State

11   error is brought to the attention, while it says judge of

12   the Supreme Court, I assume it means Justice of the

13   Supreme Court, but brought to the attention of a member

14   of the Supreme Court who is instructed in mandatory

15   language to expeditiously address it.  I think the risk

16   of that justice making an error that would result in the

17   deprivation of the rights of the plaintiffs in this case,

18   I would think would be extremely low.

19        Now, part of that second factor involves a

20   consideration of -- I will put it very colloquially --

21   would we better off if there was some other procedure

22   other than this cause of action before the Supreme Court

23   Justice.  How do you answer that?  If there was another

24   level of review, I don't know that anyone could ever say

25   it wouldn't be of value.  The difficulty I think faced

1   here is the time table and that is, could you have time

2   to do another overview, so I think the answer is that

3   there would be value to say an administrative level of

4   review or some other type of review before the Supreme

5   Court Justice review.  But in the context of elections, I

6   think its value, in fact, would be a harm because of the

7   additional time it would take.

8            The last interest or fact that's to be weighed

9   is the government's interest including the function

10  involved in the burdens of additional or substitute

11  procedural requirements.  I guess I have answered that by

12  saying that I recognize that the Secretary of State has

13  important responsibilities to carry out including

14  certifying properly people who qualify.  But there's an

15  overall governmental interest in the carrying out of

16  elections.  Every election is important.  Clearly

17  presidential elections are very important, and there are

18  time pressures that are affected upon the Secretary of

19  State in carrying out those responsibilities.  So as I

20  noted while additional procedural steps or administrative

21  review might be helpful, not so much the cost I think

22  here but the time, the cost and time is a burden that

23  would argue against a finding that those additional

24  procedures would be valuable.

25            There are a couple of cases I found.  They are

both out of New York which New York does sometimes seem
to have a predeprivation procedure but in these cases, I
have read these carefully. I think they say, at least in
Douglas v. Niagara County Board of Electrics, 2007 West
Law 3036809 Western District of New York, 2007, Judge
Arcara found that the plaintiff had an adequate
opportunity to be heard in the form of the special
proceeding brought in New York State Supreme Court under
New York state election laws and, quoting Rivera-Powell,
said the due process clause does not protect against all
deprivations of constitutionally protected interest,
life, liberty or property "only against deprivation
without due process." Rivera-Powell 470 F.3d at 465 --
64-65 quoting a Supreme Court case.

So it would be my conclusion that certainly
under the heightened standard that the plaintiff must
satisfy, and as a matter of law that he has not shown, a
clear or substantial likelihood of success on the merits
on the due process claim. Because the Court has
indicated, as I articulate my thinking in that regard,
there are several questions that have to be answered in
that analysis and that I think I expressed my -- what's
the right word? Suggestion that one or more of those
might be a close question even given the plaintiffs' high
standard.

1       The Court is going to assume for the sake of
2  argument that the plaintiff has demonstrated a due
3  process violation and address the defendant's special
4  defense of laches.  Both parties have addressed it and,
5  in the Court's view, that issue is very clear.
6       The first thing I would say is that it occurred
7  to me last night that laches is a special defense which I
8  believe must be pled.  The defendants haven't pled them
9  because they made a motion to dismiss.  However, the
10 Court was able to find that, in the context of
11 preliminary injunctions, the Court, in effect, the burden
12 follows what would be the burden in the case.  And so,
13 for example, if the burden of proof of laches is on the
14 defendant generally as to a claim asserted that would be
15 at trial or in a motion for summary judgment, then the
16 burden would be on the defendant in the context of the
17 preliminary injunction motion.
18       There's one election case, which is technically
19 an uncitable Ninth Circuit case but I think the Supreme
20 Court threw those uncitable rulings out, McDonald v.
21 County of San Diego, 124 Fed APPX 588, it appears 2005
22 West Law 736663 Ninth Circuit 2005, in which the Court
23 clearly affirmed the district court who concluded that
24 the plaintiff had failed to demonstrate a likelihood of
25 success of the merits because it was barred by the

1    equitable defense of laches.  In other words, recognizing

2    the consideration of special defenses is appropriate.

3        There's also a recent Supreme Court case called

4    Gonzales, as in the Attorney General, versus the O Centro

5    Espirita.  It is 126 Supreme Court 1211 and that goes

6    through citing what I suppose could be assumed principles

7    but as I say, it occurred to me last night it wasn't so

8    obviously.  This case says the government there had

9    invoked the well-established principle -- those are the

10   words of the Supreme Court, that the party seeking

11   pretrial relief bears the burden of demonstrating the

12   likelihood of success on the merits.  The Court then says

13   that it viewed the evidence before the district court in

14   equipoise related to two of the compelling interests

15   asserted by the government which formed part of the

16   government's affirmative defense.  And then, citing a

17   prior decision by themselves, the Supreme Court

18   continues, "we reasoned that, quote, as the government

19   bears the burden on the ultimate question of the

20   challenged Acts constitutionality, respondents, bracket,

21   the movants, must be deemed likely to prevail unless the

22   government has shown the respondents' proposed less

23   restrictive alternatives are less effective than

24   enforcing the act.".

25       Then lastly Hubbard Feeds, an Eighth Circuit

opinion in 1999 at 182 F.3d 598 at page 601. "The equitable defense of laches is applicable to an action to enforce a contestable trademark and therefore, should be considered in evaluating the likelihood of success on the merits of the trademark infringement claim.".

So having put myself, my mind at ease that it is appropriate to consider a special defense on a motion for preliminary injunction but conclude that the defendant has the burden in connection with the preliminary injunction of establishing that special defense, and I would suggest why the higher standard is required here.

Laches is a defense that is based on the maxim, "vigilantibus non dormientibus aequitas subvenit." My clerk is probably grimacing over there. Which means "Equity aids the vigilant, not those who sleep on their rights." Ikelionwu v. the United States, 150 F.3d, 233 (Second Circuit, 1998.).

As the court continued in that case, "It is an equitable defense that bars a plaintiff's equitable claim where the plaintiff is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." Thus, the party asserting that defense, in this case, the Secretary, has to show the plaintiff knew of the defendant's misconduct, second, that the plaintiff

1   is excusably delayed in taking action and third, the

2   defendant was prejudiced by the delay.

3           Another Second Circuit case decided a few years

4   before that, that case whose name I can't pronounce, the

5   second earlier case captioned Conopco Inc. v. Campbell

6   Soup Company.  95 F.3d 187 (Second Circuit 1996).

7           The circuit said in expounding on what it

8   means for a defendant to be prejudiced stated, "A

9   defendant has been prejudiced by a delay when the

10  assertion of a claim available some time ago would be

11  "inequitable" in light of the delay in bringing that

12  claim.  Specifically, prejudice ensues when a "defendant

13  has changed his position in a way that would not have

14  occurred if the plaintiff had not delayed.".

15          There are a number of election cases obviously

16  cited by the parties in which, particularly the

17  defendant, laches has been recognized and generally arise

18  in the context of where the defendant election official

19  claims that the plaintiff has come into court so late in

20  the process to seek relief that basically the process

21  can't be unwound, then the relief granted to them, the

22  plaintiffs, without throwing into chaos the whole

23  election process and jeopardizing the rights of all

24  voters.

25          Obviously there's been a mention made today of

the Williams case by the plaintiff. In that case on
October 15, the court declined to require the State of
Ohio to put a minority party, a socialist labor party on
the ballot even though the Supreme Court recognized their
claims as material. Indeed there had been another party,
the independent party, who had made the same complaint as
the socialist party. The two of the parties had
proceeded through a whole several steps of process and
eventually in a hearing before a single justice, Ohio
represented that they could put the independent party's
name on the ballot without disruption, but if there was
any more delay, it would be a different story. At that
proceeding, only the independent party was present. The
socialist party not having proceeded past the district
court decision. The socialist party after the delay of
several -- what the court describes as several days which
is not very much, came forward and said well, I would
like that order that you gave on behalf of the
independent party to apply to socialist party and the
State objected on the grounds at this point, it would be
disruptive of the process and on October 15, Justice
Stevens. I think it was Justice Stevens -- Stewart.
Justice Stewart said "Certainly at this late date, it
would be extremely difficult, if not impossible, for Ohio
to provide still another set of ballots. Moreover, the

1    confusion that would attend such last-minute change would

2    pose a risk of interference with the rights of other Ohio

3    citizens, for example, absentee voters."

4        There's another Supreme Court case which is

5    Norman v. Reed which the plaintiffs cite which would

6    appear on first glance to be favorable to them because

7    there again -- not again, there Justice Stevens granted

8    an injunctive relief on October 25 which, of course, is

9    later than today, let alone the day the plaintiff filed

10   their preliminary injunction motion.  However, the relief

11   that Justice Stevens awarded in that case was to allow a

12   name which was on the ballot that had been printed to

13   remain on the ballot.  So, in effect, the decision

14   reached by the Justice caused no disruption of the

15   electoral process that was in place and moving throughout

16   as at least as in Connecticut here September and October.

17       Lastly in the case of McCarthy v. Briscoe which

18   I think I mentioned briefly in argument, Justice Powell

19   again sitting as a circuit justice, ordered that the

20   Eugene McCarthy's name placed on the November

21   presidential ballot.  That case, of course, that's fairly

22   late but I believe in this case, Mr. Bromley testified

23   that had the plaintiff come forward sometime in September

24   that this process in Connecticut could have been

25   suspended and we would not have been as far down the road

and less would have had to be unwound and more time would
be available had the plaintiffs moved in say mid to late
September, the time frame that Justice Powell was
addressing.  The Court will note that the case that
Justice Powell was acting on was filed on July 30.  While
I recognize that the plaintiffs could not have filed that
early, however, Justice Powell's decision is 17 days
before the plaintiffs asked this court to rule.  I hope
everyone would recognize that it would take any district
court judge at least a day, in my case, I was taking two
days, to address the issues raised by the motion.

There are a number of other cases that have
been cited by both sides.  I will not bother going
through all of them, but one of them I think is
particularly informative.  That's the Fulani v. Hogsett
case out of the Seventh  Circuit.  That suit was filed on
October 13 after the plaintiffs had waited 11 weeks after
the irregularities had become a matter of public record
but two weeks after the plaintiff had actual notice of
them.   In that instance, the Court found that there was
laches and spoke at some length about the impact of
trying to undue what the election officials had done in
the time frame in which the plaintiffs had sort of sat on
the sidelines and not brought their case.  "Laches arises
when an unwarranted delay in bringing a suit or otherwise

pressing a claim produces prejudice to the defendant. In
the context of elections this means any claim against the
state electoral procedure must be expressed expeditiously
As time passes, the state's interest in proceeding with
the election increases in importance as resources are
committed and irrevocable decisions are made.  The
candidate's and party's claims to be respectively a
serious candidate and a serious party with a serious
injury become less credible by their having slept on
their rights.".

     As I say, there's a lot of cases I have
reviewed.  The other case that permitted the changing of
a ballot is the New Jersey Democratic Party case where
Candidate Toricelli died on October 1 and October 2 the
Supreme Court in New Jersey ordered the reprinting of
ballots at the cost of $800,000 to be borne by the
plaintiffs which were in effect the Democratic party who
sought to put a live's person name on the Democratic
line.  Again the court would note that was October 1 that
the plaintiff came to the court and the 2 that the court
ordered relief.

     Here, while the plaintiff filed their suit on
October 1, despite the inquiry of the court, no motion
was filed as required by Rule 7 until October 17.  The
Court appreciates Mr. Rule's affidavit in which he

indicates that it took some time after the 15th for him
to be able to determine, in fact, whether he had 7500
valid signatures, presumably allowing counsel under Rule
11 to be able to make a claim in this federal court
that's based in fact and law.  The affidavit doesn't tell
me exactly how long that took Mr. Rule, though.  Even if
I assume it took him two weeks, in other words, until
October 1, when the complaint was filed, that still
doesn't explain why the motion for preliminary injunction
wasn't filed on October 1.  The Court was available.  I
think I can say that as a matter of speculation.  I held
that conference on the 8th, if I had a motion, I would
have acted sooner than the 8th and it can be said that
certainly by then the plaintiff had a basis for his
claim.  So there's nothing before the Court that explains
to me why the plaintiff waited until October 17 to ask
this court to enter a preliminary injunction against the
Secretary of State.

Therefore, it is the conclusion of this court
that the defendants have shown that there's a substantial
likelihood of their success on the special defense of
laches and the necessary conclusion from that, therefore,
is that the plaintiff cannot show a substantial
likelihood of success of succeeding on the merits because
if it has a meritful claim, it would be barred by the

1    defense of laches.

2         The court reaches that conclusion with the

3    backdrop of the cases that I have reviewed and many

4    others that I have read, and I'm not going to bother to

5    put on the record, but it is clear that the plaintiffs

6    knew of the defendants' alleged misconduct on September

7    15 when they were told telephonically and by letter that

8    their two candidates -- to inform plaintiffs -- would be

9    excluded from the November 4 ballot.

10         As I said, I recognize it could take sometime

11   to determine if there was a basis to a claim that they

12   had the requisite number of signatures and their rights

13   were violated by refusal to certify them for the

14   election.  I'm not going to comment if it did take two

15   weeks until October 1.  I'm not sure that's a reasonable

16   period given the time pressures that are faced by the

17   state in preparing for an election on November 4 but, and

18   I don't think the plaintiff has shown that it is

19   reasonable.  I'm not sure they have claimed that the 15

20   days was actually necessary, but I don't think they have

21   shown it was reasonable.  Even if it was reasonable, as I

22   say, there's no excuse, for having a basis to allege

23   their claims, i.e., filing their complaint, they waited

24   another two and a half weeks to file a motion which

25   motion was filed on Friday afternoon, two and a half

1    weeks prior to the actual election day.  Defendants have

2    clearly shown prejudice, could show that prejudice on the

3    day the motion was filed, certainly today.  Absentee

4    ballots and other ballots, presidential, military, out of

5    state, I forget what those were called, those had all

6    gone out by the time the motion was filed.  So under some

7    of the cases I referred to, one of the Supreme Court

8    justices pointed to the fact the absentee ballot had gone

9    out so it was too late.  As I asked plaintiffs' counsel,

10   I'm not aware of any case which permitted the election to

11   proceed, some voters, albeit, a very small number but

12   nonetheless voters, are voting on a different ballot than

13   the rest of the voters.

14          Also I will not go into a lot of detail.  I

15   referenced Mr. Bromley's testimony, which I do credit.  I

16   found him very credible and clear, and I think laid on

17   the record quite clearly what's involved in the state of

18   Connecticut in conducting a presidential election.  The

19   Court finds that two million ballots have already been

20   printed, the computer cards to run the optical scanning

21   machines to accommodate those two million possible voters

22   have already been programmed -- I guess if that's the

23   right word -- and distributed along with the paper

24   ballots out to -- I love this about the State of

25   Connecticut, all of its 169 cities and towns.

1          In addition, and I would note that while this

2     will be the second election in which almost all of the

3     voters in Connecticut will use optical scanning machines,

4     that it will be the first time in a presidential

5     election -- I did not ask about voter turnout in

6     non-presidential elections -- but I believe it is

7     reasonable for me to assume that voter turnout on

8     November 4, will be among the highest in the history of

9     the state and certainly higher than is expected say in

10    municipal elections that occurred in 2007.  And so the

11    testing that's needed to be certain that the paper

12    ballots will work on the machine with the computer

13    program cards, has been undertaken and is to be completed

14    by tomorrow.

15         If I were to grant the plaintiffs relief they

16    seek, it would require the reprinting of two million

17    paper ballots, the reprogramming of the computer cards

18    for all of the machines in 169 towns, which reflect 833

19    different ballots, the redistribution of the cards and

20    ballots to 169 towns, and the testing of those paper

21    ballots against the machines and the cards to be certain

22    that they work.

23         The court credits Mr. Bromley's testimony.  I

24    think I will conclude this myself, but obviously I credit

25    his testimony that this just can't be done.  It can't be

1    done in the time period from today to November 4, and it

2    couldn't have been done from the date of the filing of

3    the motion, the 17th of October.  Among the reasons it

4    can't be done is there aren't printers available to print

5    the two million ballots.  There isn't time available to

6    reprogram the number of cards we're talking about, let

7    alone the logistical steps of having to retrieve them,

8    get those cards to the programmers, and get them back and

9    into the right machines and tested.

10          Further, and this was something I had not

11    myself considered until Mr. Bromley's testimony, but that

12    there are other laws, certainly state laws, having to do

13    with challenges, recounts and the designation of electors

14    that may be federal law because it is a presidential

15    election, all of which are tied to certain numbers of

16    dates after the election in which, if the election could

17    not occur on the 4th because as I have said, the ballots

18    could not be printed and the cards reprogrammed before

19    then, would throw into chaos really those deadlines and

20    finally create a situation where state law would likely

21    be violated.

22          And lastly a couple of cases I already quoted

23    from talked about the risk of sort of last minute changes

24    posing a risk of interference with the rights of the

25    voters and I think Justice Stewart in the Williams case

where he cited the absentee voters whose ballot had
already been sent out.  Clearly their rights would be
implicated were I to order the relief the plaintiffs
requested -- those of the personnel from Connecticut
serving in the military, those who have relocated and are
entitled to vote back here in Connecticut under federal
law, their rights would be in jeopardy, would be
violated, but I think it would be highly likely there
would be enormous confusion and therefore, likely errors
in the context of an election by trying to make this
change at this time given the large amount of voter
turnout, the large number of ballots that have to be
printed, and the number of cards given the new equipment
that's put into place I think to comply with federal law.
All that's involved, in other words, in trying to make a
change at this point as I say, well, the motion was filed
two and a half weeks before the election.  It strikes me
that Gold decision which, of course, presented more
extreme facts -- I believe there the order was issued to
remove the person's name much later in the process than
today is in the Connecticut process -- but there in Gold,
you were talking about a much smaller pool of voters and
voting places and the chaos that appears to have resulted
which Judge Oakes recounted at great length, which
obviously troubled Judge Trager of the district court.

To me that case sort of is an example of the kind of chaos that can result from court intervention at the "last minute" in that case.

In this case, we're not on November 3, the hypothetical I posed to the plaintiffs' counsel but effectively we are, as I say, because of the fact that it's a presidential election, that there's two million possible voters, that we have essentially a new system of voting with optical scanning machines that need to be tested against the printed ballots, and that as I say the absentee and other types of ballots that have already gone out, we're really past the time when this court could in the exercise of its powers of equity, grant a motion for preliminary injunction.

Therefore, the court's final conclusion is I don't believe the plaintiff has demonstrated a violation of due process cognizable under the due process clause, but at least not to the standard of substantial or clear as required to get a grant of this motion but even if it has, the Court concludes that the defendant has carried that high burden with respect to its special defense of laches, and particularly because it's demonstrated that would be extremely chaotic and impossible and therefore, harmful to the rights of other voters in Connecticut, the people I suppose that the defendant would claim whose

1    interest she represents if the court were to grant the

2    preliminary injunction that the plaintiffs seek.

3              In essence, while the plaintiffs may have a

4    claim, may be correct in their claim, when they argue

5    that they, in fact, presented 7,500 qualified signatures

6    and thus have a right to be on the ballot -- again I

7    emphasize the word assume that they presented that --

8    they waited much too long to seek the Court's relief.

9              Therefore, the motion for preliminary

10   injunction is denied.  The plaintiffs haven't reasonably

11   and inexcusably moved for a preliminary injunction.  They

12   cannot now establish that they clearly are likely to

13   prove their claim.  The motion for preliminary injunction

14   is denied.

15             The opinion of the court is obviously reflected

16   in the transcript.  Again I apologize this is a very long

17   verbal ruling.  I think if any -- if the plaintiffs wish

18   to appeal, they would need to let the reporter know

19   because she's prepared, as she's always diligent to

20   prepare this transcript very promptly and to convey it to

21   the circuit if you do wish to appeal.  And I think I

22   heard at lunch that the Clerk of the Second Circuit has

23   been in touch with our Clerk being certain that the

24   record could be transmitted quickly, if there was an

25   appeal.  I ask that you let the reporter know so she

knows whether to stay up tonight to do this opinion so

that it will be available to the circuit tomorrow.  All

right, sir.  Thank you all very much especially for your

patience.  Unless there's anything further, the court

will stand adjourned.

(Whereupon, the above hearing adjourned at

03:27 p.m.)

COURT REPORTER'S TRANSCRIPT CERTIFICATE

I hereby certify that the within and foregoing is a true

and correct transcript taken from the proceedings in the

above-entitled matter.

/s/  Terri Fidanza

Terri Fidanza, RPR

Official Court Reporter

DATE_____